IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

PATTI R. CATTENHEAD,

       Plaintiff,

v.                             ACTION NO. 2:04cv686

JO ANNE B. BARNHART,
Commissioner of Social Security,

       Defendant.

## ORDER AND OPINION OF THE COURT

This action is brought pursuant to Section 205(g) of the Social Security Act, codified at

42 U.S.C. § 405(g), to obtain judicial review of the Commissioner of Social Security's

("Commissioner") final decision, which denied Patti Cattenhead's ("Ms. Cattenhead" or

"Plaintiff") claim for Disability Insurance Benefits ("DIB").  The record includes a Report and

Recommendation ("R & R") of the United States Magistrate Judge, made in accordance with 28

U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure, affirming the

decision of the Commissioner to deny Cattenhead DIB.  Cattenhead timely objected to the

Magistrate Judge's recommendation.  See 28 U.S.C. § 636(b)(1) (providing that a party may

object, in writing, to a Magistrate Judge's R & R within ten days after being served with a copy).

## I. PROCEDURAL BACKGROUND

On or about July 1, 2001, Ms. Cattenhead filed an application for DIB with the

Department of Health and Human Services of the Social Security Administration ("SSA")

alleging disability commencing May 15, 1999.  Record (R.) 15.  She alleged that she suffered

from fibromyalga, depression, and Bipolar Disorder, which prevented her from working.[1] Id.; Exhibit (Ex.) 3B.  Ms. Cattenhead's claim was denied by the Commissioner, as was her request for reconsideration.  R. 15.  Ms. Cattenhead then requested a hearing before an Administrative Law Judge ("ALJ") with the SSA.  On December 15, 2003 the hearing was held, where she was represented by an attorney and a vocational expert testified.

The ALJ issued a decision on May 28, 2004, denying Ms. Cattenhead disability benefits. R. 16.  The ALJ found that Ms. Cattenhead suffered from severe impairments of chronic pain syndrome, Bipolar Disorder, and Substance Abuse Disorder, causing significant vocationally relevant limitations.  R. 17.  The ALJ also found, however, that other impairments claimed by Plaintiff were non-severe, responding well to treatment and medication, and not persisting for longer than twelve months.   R. 17.  Most notably, the ALJ determined that while she suffered from the above severe disorders, Ms. Cattenhead's repeated attempts at treatment were unsuccessful due primarily to her abuse of prescription and illegal drugs.  R. 17.   It is during these periods of drug abuse, the ALJ concluded, that she is unable to care for herself and function effectively.  R. 17.

In reaching its decision, the ALJ found that, though Plaintiff was unable to return to former employment, she was "able to make an adjustment to work that exists in significant numbers in the national economy."  R. 16.  Specifically, the ALJ found that "absent drug use, the claimant retains the residual functional capacity to perform a limited range of light and sedentary work, and can carry out simple instructions and simple tasks involving few or infrequent changes

---

[1]"Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)

and requiring only occasional interaction with peers, supervisors, and the public." R. 24. This conclusion was reached upon consideration of Ms. Cattenhead's "age, education, work experience, and residual functional capacity." R. 16. Ms. Cattenhead was thus determined not to be under disability at the time of the ALJ's decision. R. 24.

Though Ms. Cattenhead requested review of the ALJ's decision with the Appeals Council of the Office of Hearings and Appeals of the Social Security Administration, the Council denied review       on September 17, 2004. R. 7-9. The ALJ's decision was thus the "final decision" of the Commissioner. As such, the Appeals Council's denial of review made Plaintiff's claim ripe for judicial review by the Magistrate pursuant to 42 U.S.C. § 405(g).

Ms. Cattenhead filed her Complaint for judicial review of the Commissioner's decision denying DIB on November 15, 2004, which Defendant answered on January 31, 2005. Ms. Cattenhead filed a Motion for Summary Judgment with Memorandum in Support on April 12, 2005. Defendant filed its own Motion for Summary Judgment and accompanying Memorandum on may 17, 2005. Because neither party indicated special circumstances requiring oral argument, the Magistrate issued its Report and Recommendations on June 21, 2006, based solely on the parties' memoranda and the Record. R & R 1. The Magistrate recommended that the final decision of the Commissioner should be affirmed, because the ALJ relied on substantial evidence in making its determination that Plaintiff is still capable of working absent the use of drugs and alcohol. R & R 25.

Ms. Cattenhead timely objected to the Magistrate's R & R on June 21, 2006. Plaintiff objects only to one determination made by the Magistrate; that is, that in finding that she was able to perform light and sedentary work, the ALJ failed to give sufficient weight to a doctor's letter that she claims directly refuted the determination of both the ALJ and, subsequently, the

Magistrate.  Plaintiff's Objections to the United States Magistrate Judge's Report and

Recommendation (Plaintiff's Objection) 2-3.  Because, she asserts, the Magistrate failed to make

a specific finding on whether the letter was germane to the Plaintiff's claim of disability, the R &

R of the Magistrate should be rejected, and the determination of the Commissioner reversed or

remanded.  Plaintiff's Objection 5.

## II. FACTUAL BACKGROUND

Ms. Cattenhead was a forty-two year old woman at the time of her hearing in this matter.

R. 16.  She has a high school diploma and is a certified nurse.  R. 16.  Her past relevant work

experience is as a hairdresser and a nurse.[2]  R. 16.  Ms. Cattenhead claimed that she was entitled

to disability benefits because she suffered from fibromyalgia, Bipolar Disorder, and depression.

R. 16.

Ms. Cattenhead suffers from fibromyalgia, Bipolar Disorder, and depression.  R. 495,

499-500, 501.  She has been treated for back pain since 1991, and for Bipolar Disorder and

depression since 2000.  R. 495.  She testified that she became unable to work in 1999 due to her

fibromyalgia.  R. 490-91.  She has been undergoing psychotherapy and receiving medication for

her condition since 1999.  R. 131.

Ms. Cattenhead testified at the hearing that she lived with her daughter, son-in-law, and

grandson.  R. 501.  Prior to living with her family, Ms. Cattenhead was incarcerated for cocaine

possession and was on probation at the time of the hearing.  R. 493.  With regard to her daily

activities, Ms. Cattenhead testified that she prepared meals occasionally, washed dishes, helped

care for her grandson, and bathed herself.  R. 498.

---

[2]Past relevant "work experience" is defined as work that was "done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity."  20 C.F.R. § 416.965(a) (2004).

In its exhaustive summary of the record, the Magistrate's R & R details the many health problems and attendant doctors that Ms. Cattenhead has visited since 1997, when she was first diagnosed with fibromyalgia.  R & R 3-13.  The Court need not repeat this extensive factual summary here, for Plaintiff's objection is limited to the Magistrate and ALR's inattentiveness to the letter of Dr. Robert B. Hansen.  Plaintiff's Objection 3.  The Court will thus limit its factual discussion and analysis to the letter and all attendant facts, and will otherwise defer to the Magistrate's thorough account of the facts given in the R & R and amply supported by the Record.

The Record shows that Dr. Robert B. Hansen treated Ms. Cattenhead's fibromyalgia from its diagnosis in 1997, through the period of her hearing for disability benefits.  Ex. 17F (entailing 166 pages of medical records from the doctor, dating from July 16, 1997, through June 15, 2002).  On March 15, 2002, Mr. Hansen drafted an office note in support of Ms. Cattenhead's "bid to pursue disability."  R. 482.  The note states:

> Ms. Cattenhead is seen back in follow-up for chronic pain.  She has been a patient of this practice for many years.  She has struggled with axial pain consistent with fibromyalgia.  She represents a very consistent and typical patient with this disorder.  She has undertaken all recommended treatments.  She has been treated quite aggressively for this problem.  There has been no significant resolution, and it has been quite devastating for her vocationally.  She had to stop working as a hairdresser.  She had at one point owned her own shop.  She was unable to continue even part time work on contract with other shop owners.  She took nursing courses and tried a career as a nurse.  This also proved impossible due to the job requirements of lifting, standing and prolonged sitting.

> Ms. Cattenhead has been evaluated by Dr. Charles Alexander, an occupational medicine physician in this practice.  He and I are of the opinion that Ms. Cattenhead is not able to perform meaningfully in the workplace due to her chronic pain.  Full clinical information from today's visit is contained in the Center chart.  Her examination remains consistent with fibromyalgia.

> Ms. Cattenhead is currently off medications and is having more pain as a result.  She will be restarted on Neurontin and Ultraset.  Seroquel can be used for sleep.

> Ms. Cattenhead suffers from fibromyalgia, probably obstructive sleep apnea (she has just completed a sleep study), sacroiliac dysfunction, low back pain, and a secondary depression. As mentioned above, all of this has produced a situation in which, in my opinion, she is unable to work. This is because of demands in almost any job requiring prolonged periods of activity to include sitting or standing. Ms. Cattenhead is unable to do these for any reasonable sustained period of time. I would support her bid to pursue disability, and she tells me that this is in progress. A follow-up appointment has been arranged.

R. 482. This letter was admitted as part of Ms. Cattenhead's medical records for purposes of the

ALJ's determination. R. 4. It was later re-submitted with Plaintiff's petition to the Appeals

Council. R. 6. The letter is one piece of evidence in a record that includes 53

exhibits—medical records, disability reports, insurance information, jurisdictional documents,

payment decisions—and spans 510 pages. See generally, R. 1-510.

### III. STANDARD OF REVIEW

#### A. THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The Magistrate Judge makes only a recommendation to the court. The recommendation

has no presumptive weight, and the responsibility for making a final determination remains with

the court. Owens ex rel. Metcalf v. Barnhart, 2006 WL 2384706 *1 (D.S.C. 2006) (citing

Mathews v. Weber, 423 U.S. 261, 269 (1976)). In a social security disability benefits case, the

district court reviews de novo those portions of the Magistrate Judge's report and

recommendation to which specific objection is made, and may accept, reject, or modify, in

whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the

Magistrate Judge with instructions. 28 U.S.C.A. § 636(b)(1); id.

Because Plaintiff's objection is grounded in one piece of evidence, the letter of Dr.

Robert B. Hansen, and its bearing on the Administrative Law Judge's ("ALJ") consideration of

her alleged disability, the Court will restrict its analysis to Plaintiff's objection. In light of the

Magistrate's comprehensive review of Plaintiff's case, all other factual and legal determinations made by the Magistrate will be adopted by the Court.

## B. The Commissioner's Final Decision

The role of the court in the administrative scheme established by the Social Security Act is a limited one. On the matters to which the claimant has objected, the court's review is restricted to a determination as to whether there is substantial evidence to support the ALJ's conclusion that plaintiff failed to meet the conditions for entitlement pursuant to the Act. See Craig v. Chater, 76 F.3d 585, 589 (4th Cir.1996). Substantial evidence is "more than a mere scintilla" of evidence, but only such evidence "as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

In reviewing for substantial evidence, the court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Craig, 76 F.3d at 589. Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether the claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. Richardson, 402 U.S. at 401. If substantial evidence exists for the Commissioner's findings, and those findings were reached through application of the correct legal standard, the conclusion must be affirmed. Craig, 76 F.3d at 589; Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966).

-7-

Under Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984), a denial of benefits is not supported by substantial evidence if the ALJ "has not analyzed all evidence and . . . sufficiently explained the weight he has given to obviously probative exhibits." The issue before this Court is thus whether the ALJ's alleged failure to give due credit to Dr. Hansen's letter requires a finding that the ALJ's determination is not supported by substantial evidence. See id.

## IV. ANALYSIS

### A. ENTITLEMENT TO DISABILITY BENEFITS

In evaluating whether a claimant is entitled to disability benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. Under the regulations, an ALJ must consider, in sequence, whether a claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that meets or equals a condition contained within the SSA's official listing of impairments, (4) has an impairment which prevents past relevant work, and (5) if not, has an impairment that prevents her from any substantial gainful employment. 20 C.F.R. §§ 404.1520 and 416.920. An affirmative answer to one, or negative answers to questions two or four, results in a determination of no disability. Id. Affirmative answers to three and five establish disability. Id. The claimant bears the burden of production and proof during the first four steps of the inquiry. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992) (per curiam). If the claimant can carry her burden through the fourth step, the burden shifts to the Commissioner to show that other work is available in the national economy that the claimant can perform despite her condition. See id.

If a claimant is found to be disabled under the above analysis, but suffers from a drug or

alcohol addiction, the ALJ must make an additional determination: "[a]n individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction . . . would be a contributing factor material to the Commissioner's determination that the individual is disabled." 104 P.L. 122 § 155.  Drug abuse or alcoholism is "material" to the disability if, after the above five-step evaluation is applied and the claimant is found disabled, the claimant meets additional statutory guidelines governing materiality.  See 20 C.F.R. 404.1535.  Under this analysis, the "key factor" is whether the Commissioner would still find the claimant disabled absent use of drugs or alcohol.  20 C.F.R. 404.1535(1).  In making this determination, the Commissioner evaluates which limitations would continue to affect the claimant if she stopped using drugs or alcohol, and then decides whether the remaining limitations would be disabling.  20 C.F.R. 404.1535(2).  If the remaining limitations are not disabling, then the use of drugs and alcohol is considered a "factor material to the determination of disability."  20 C.F.R. 404.1535(2)(i).  If, on the other hand, the remaining limitations are disabling, the claimant is considered disabled independent of drug abuse and alcoholism, and this is therefore not a material contributing factor.  20 C.F.R. 404.1535(2)(ii).

### B. Applying the Disability Regulations to Plaintiff

In applying the Social Security guidelines, the initial consideration for determining a claimant's disability is whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b) and 416.920(b).  The ALJ determined that Ms. Cattenhead has not engaged in substantial gainful activity since her May 15, 1999 onset date, although she had engaged in hairdressing below substantial gainful activity levels.  R. 16.

The second and third inquiries under §§ 404.1520 and 416.920 concern the severity of

the claimant's impairments.  20 C.F.R. §§ 404.1520(c)-(d) and 416.920(c)-(d).  The ALJ found

that Ms. Cattenhead suffers from chronic pain syndrome, Bipolar Disorder, and Substance Abuse

Disorder, which cause significant vocationally relevant limitations and would be regarded as

"severe" under the second step of the SSA guidelines.  R. 17.  All other claimed impairments

were found to be non-severe.  R. 17.  The ALJ nevertheless determined that Ms. Cattenhead's

impairments "do not meet or medically equal one of the listed impairments in Appendix 1,

Subpart P, Regulation No. 4."  R. 23.

The fourth factor for consideration is whether the impairment prevents the claimant from

performing her past relevant work.  20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f).  The ALJ

found, based on the evidence and testimony as a whole, that Ms. Cattenhead "retains the residual

functional capacity to perform the strength demands of light work."  R. 20.  However, he also

concluded that Ms. Cattenhead's severe substance dependence prevents her from performing

both her past relevant work and work existing in significant numbers in the national economy.

R. 20.  She was, therefore, disabled.  R. 20.

The fifth consideration is whether other work roles that the claimant could perform exist

in significant number in the national economy.  20 C.F.R. §§ 404.1520(g) and 416.920(g).  Upon

hearing the testimony of a vocational expert, the ALJ found that Ms. Cattenhead was not

disabled "within the framework of Medical-Vocational Rule 202.21, <u>absent drug abuse</u>."  R. 23

(emphasis added).

Applying the additional statutory framework for individuals whose alleged disability may

be due to drug abuse or alcohol addiction, the ALJ determined that "the claimant would not be

disabled if she stopped using drugs."  R. 24.  This decision was based upon evidence at the

hearing and on the Record.  R. 24.  In conclusion, the ALJ stated that "in accordance with section 105 of P.L. 104-121, the claimant is ineligible for disability payments under Title II of the Social Security Act."  R. 24.  This Court agrees with the Magistrate's finding that the evidence in the Record supports the ALJ's decision.

C. SUBSTANTIAL EVIDENCE SUPPORTS THE ADMINISTRATIVE LAW JUDGE'S DECISION

Ms. Cattenhead has specifically objected to the ALJ's "failure to mention Dr. Hansen's March 5, 2002 letter" in its decision.  Plaintiff's Objection 3.  She asserts that this letter is "perhaps the most important piece of evidence in the case," because Mr. Hansen states that Ms. Cattenhead was disabled by virtue of her fibromyalgia, which arguably has no connection to her drug abuse.  Id. at 3-4.  Ms. Cattenhead, however, overstates the importance of this letter in light of the extensive record and conflicting evidence.

The ALJ, not physicians, has the responsibility to determine residual functional capacity. 20 C.F.R. §416.946.[3]  "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (citing Craig, 76 F.3d at 590).  The ALJ did consider Mr. Hansen's opinion, but found that it was not well supported by the Record.  See R. 19.  Specifically, the ALJ stated:

> The medical evidence further demonstrates that Ms. Cattenhead has a long history of treatment for chronic myofascial pain syndrome affecting her low back, neck and shoulders.  Her pain was initially characterized by Dr. Hansen as fibromyalgia. However, I find no clinical or objective support for this diagnosis.  Dr. Hansen's records indicate that Ms. Cattenhead . . . has consistently shown no motor, reflex, or sensory deficit, good range of motion, and normal gait and station. . . . She has associated sleep disturbance and headaches, but diagnostic testing has been negative.

---

[3]Similarly, the ultimate question of disability is reserved for the Commissioner.  20 C.F.R. §404.1527(e).

Her pain management therapy was discontinued because of abuse of prescribed medications. Ex. 17F.

R. 19.  The ALJ thus carefully considered Mr. Hanson's opinion, weighing it against Mr. Hansen's ample medical records, and found that it was not supported by the evidence.

When reviewing the administrative record, the Court does not make credibility determinations.  Craig, 76 F.3d at 589.  That responsibility belongs to the administrative law judge.  Hays, 907 F.2d at 1456.  It is thus within the discretion of the ALJ to parse a medical opinion, crediting some aspects while discrediting others.  Dr. Hansen's opinion provided a basis for the ALJ to determine that the Plaintiff had the residual functional capacity to perform light and sedentary work where this opinion was consistent with the weight of the evidence.  Where his opinion was inconsistent with the evaluation of at least seven physicians and other medical professionals, however, the ALJ determined that Mr. Hanson's letter was not credible.  Where, as here, substantial evidence supports a finding regarding a physician's credibility, that finding must be upheld.  Thus, the Court **FINDS** that substantial evidence supports the ALJ's finding of disability.

### V. CONCLUSION

After reviewing the full record, it is clear that the ALJ and Magistrate Judge thoroughly examined the proffered facts, evidence and testimony.  The Court **FINDS** that substantial evidence supports the ALJ's decision.  Having considered the Plaintiff's objections to the Magistrate Judge's comprehensive Report and Recommendation de novo, the Court **AFFIRMS** the Recommendation of the Magistrate Judge and **GRANTS** summary judgment to the Defendant. Accordingly, **JUDGMENT IS ENTERED** in favor of the **DEFENDANT**.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record.

It is so **ORDERED**.


_____
/s/
HENRY COKE MORGAN, JR.
UNITED STATES SENIOR DISTRICT JUDGE


Norfolk, Virginia
September 11, 2006